**Thomas ARNOLD, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 80–1077.**

District of Columbia Court of Appeals.

Argued Oct. 15, 1981.*

Decided March 31, 1982.

* The parties submitted additional memoranda subsequent to oral argument.

Robert Mark Greenspan, Baltimore, Md., appointed by this court, for appellant.

John R. Fisher, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry and Cary M. Feldman, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before KELLY, KERN and NEBEKER, Associate Judges.

KERN, Associate Judge:

Following a jury trial, appellant was convicted of one count of second-degree burglary, D.C.Code 1973, § 22–1801(b); attempted second-degree burglary and one count of destruction of property, D.C.Code 1973, § 22–403.

The record reflects that *after the jury was impaneled but before they were sworn*, the government filed enhanced penalty papers under D.C.Code 1973, § 22–104(a), since appellant had been convicted for four previous felonies.[1] In addition, the government filed an information indicating that appellant had committed two of the originally charged offenses while on release pending trial and that, upon conviction in the present case, he would be subject to the increased punishment permitted under D.C. Code 1973, § 23–1328. Finally, the government filed a third information under D.C. Code 1973, § 22–104 indicating that appellant was subject to additional penalties upon conviction as a second offender.[2]

Appellant now raises three challenges on appeal. First, he claims that the motions judge improperly denied his pretrial motion under Super.Ct.Cr.R. 14 to sever the counts arising from two separate burglary incidents. Next, appellant argues that the enhanced penalty papers were untimely filed in violation of D.C.Code 1973, § 23–111(a)(1) because the government submitted them *after* the jury had been selected but

---

[1] Appellant had been convicted of forgery in two cases on June 8, 1971; breaking and entering and larceny on June 15, 1967; and unauthorized use of a vehicle in 1965. These convictions occurred in North Carolina.

[2] This information relied upon the conviction for breaking and entering and larceny in North Carolina on June 15, 1967.

*before* they were sworn. This section requires that such papers be filed with the clerk of the court "prior to trial." Finally, appellant urges that the case be remanded for resentencing in accordance with D.C. Code 1973, § 23–111(b), since the trial judge failed to ask appellant whether he affirmed or denied that he had been previously convicted and failed to inform him that any challenge to a prior conviction which was not made before the sentence was imposed could not thereafter be raised to attack the sentence. As to this contention, the government concedes that the trial judge erred in giving appellant an enhanced sentence for attempted burglary in violation of D.C.Code 1973, § 23–111(b) and agrees that the case should be remanded in this respect.[3] Thus, we must address only appellant's remaining two challenges.

## I

This appeal followed a prosecution on an indictment charging appellant with two counts of second-degree burglary, two counts of destruction of property, and one count of petit larceny arising from two separate incidents. Appellant filed a motion to sever the first three counts of the indictment, which charged offenses occurring on March 17, 1979, from the last two counts, which charged offenses on July 26, 1979.

**3.** Although the court was cognizant of the information filed pursuant to D.C.Code 1973, § 22–104(a) with respect to the burglary charge subjecting appellant to any sentence up to life imprisonment, it did not specifically rely on this information when it imposed sentence. Since the actual sentence of two to six years for second-degree burglary was well within the statutory limits, it is not subject to review by this court. *Jones v. United States*, D.C.App., 416 A.2d 1236, 1239 (1980).

**4.** The court stated:

Looking first of all at the purported facts and, of course, all a judge can do at this stage of the proceedings is go on the purported facts. That is why a judge has a continuing obligation at the trial to listen quite carefully as the Court of Appeals instructs and if things change or if the situation warrants even during the trial, he can and should consider a severance at that time.

On both occasions, the silent alarm at Sarge's Liquor Post at 2746 14th Street, N.W. had been triggered at approximately 4:30 a. m. by a break-in at the rear of the store. In his motion seeking severance for prejudicial joinder under Super.Ct.Cr.R. 14, appellant asserted the jury would unfairly cumulate the evidence and find him guilty if these two incidents were joined for trial.

On February 12, 1980, Judge Mencher held a hearing to determine appellant's motion. The government presented evidence that the same store had been the target on both occasions, that the incidents were separated by only four months, that the break-ins had occurred at around 4:30 a. m., and that the same method of entry was used each time. At this hearing, appellant vigorously disputed the government's assertion that both incidents involved the removal of bricks from beneath a window in the rear of the store. Appellant argued that a window had been used as the method of entry in the first incident, while bricks beneath this window had been broken and chipped away during the second break-in. The record revealed that the window itself had been bricked up previous to the second incident. After hearing argument, the court denied appellant's motion to sever on several legal bases.[4] A jury trial before Judge Kessler commenced on June 23, 1980, and at its conclusion, the jury found appellant guilty of the previously mentioned charges.

However, at this time what I have proffered to me is a March 17, 1979, incident and a July 26, 1979, incident. Obviously not remote in time. Nine months, indeed, was cited in the *Arroyo* case. That was a nine months situation there. So we are not remote in time.

We have the very same location, Sergeant Post Liquor Store at 2748 [*sic*] Fourteenth Street, Northwest.

We have almost the exact time for both incidents, between approximately 4:30 and 4:45 a. m. in the morning.

In both instances, from what I can gather from the pleadings is that in the March 17 incident a brick wall underneath the window of the store had been broken out. That is the proffer on [*sic*] March 17 incident.

On the July 26 incident, it is that when the police came back they discovered that the bricks of a wall had been broken out. Again in both instances the defendant is in the vi-

## II

Appellant first claims that the motions judge improperly denied his pretrial motion to sever the counts arising from the two separate incidents under Super.Ct.Cr.R. 14.[5] Appellant did not contend at any time that the offenses had been improperly joined initially under Super.Ct.Cr.R. 8(a).[6] Appellant's argument is two-fold: first, he claims that the motions judge could not have properly exercised his discretion because, at the time of the motion, the government mistakenly and misleadingly indicated that the suspect had entered through a broken brick wall in *both incidents* whereas proof at trial indicated that a window had been used for entry during the March 17 episode. Second, appellant raises the classic prejudicial joinder arguments discussed in *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964), and its progeny. For the reasons discussed below, we find that appellant's challenges are meritless and that the motions judge properly denied appellant's pretrial motion for severance.

A. The record of the pretrial severance hearing establishes that Judge Mencher considered *all* aspects of each incident in rendering his judgment. He recognized that the same location at almost the exact same time, between 4:30 and 4:45 a. m., had

been broken into. He also indicated that the incidents were not remote in time, since they were only four months apart, citing *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1149 (2d Cir. 1978) (nine months between crimes not remote). While properly joined as "similar crimes" under Rule 8(a), Judge Mencher concluded that the offenses were separable by simple and distinct proof, citing *Drew v. United States, supra.*

Furthermore, Judge Mencher concluded that evidence of these crimes would be "mutually admissible" in separate trials, and that, under *Crisafi v. United States*, D.C.App., 383 A.2d 1, *cert. denied*, 439 U.S. 931, 99 S.Ct. 322, 58 L.Ed.2d 326 (1978), there is no prejudicial joinder in such a situation. Finally, Judge Mencher was well aware of the guidelines established in *Samuels v. United States*, D.C.App., 385 A.2d 16 (1978), that the exercise of discretion "involves weighing the prejudice to the defendant caused by joinder against the obviously important consideration of economy and expedition and judicial administration." After examining all factual and legal arguments, Judge Mencher denied appellant's request for severance.

■ Appellant argues that the government's misrepresentation of the method of entry in the first incident prevented Judge

---

cinity. Once he is actually inside of the premises when the police respond to the silent burglar alarm and in the July incident when the police responded to the sound of the burglar alarm, the defendant is on the outside and is apprehended after a chase.

Now, looking at the cases and I think neither one of the three of us, the lawyers or the Judge here have nor do we have to give a long lecture on the law. I think from what I get in Mr. Greenspan's able pleading and response, I think we recognize what the principles are. It is just a matter of what tones we give to those various cases.

I think it is clear that the offenses are fairly separable by simple and distinct proof. I think that is clear. [Record at 452–54.]

5. Super.Ct.Cr.R. 14 states:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an incident or information or by such joinder for trial together, the court

may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the prosecutor to deliver to the court for inspection in camera any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

6. Super.Ct.Cr.R. 8(a) states:

JOINDER OF OFFENSES. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Mencher from properly exercising his discretion. The record reveals that the Judge accepted the government's proffer on this point.

> In both instances, from what I can gather from the pleadings is that in the March 17 incident a brick wall underneath the window of the store had been broken out. That is the proffer on March 17 [sic] incident. [Record at 453.]

The police officers' testimony at trial revealed that a window with bars had been broken and the bars removed during the March 17 break-in. It was the window, and not the brick wall, that had served as the method of entry on this date. Although the motions judge relied upon faulty information as to the single aspect of method of entry, we conclude that this did not prevent the proper exercise of his discretion in light of the sufficiency and accuracy of the remaining proof offered at the pretrial hearing when compared with the ultimate facts presented at trial.

As discussed earlier, the record of the pretrial hearing illustrates that the method of entry was only one of the many factors considered by Judge Mencher when discussing the similarity of the crimes. Defense counsel pointed out on two separate occasions that there was a factual dispute as to the exact method of entry, and that the defense contended that the first entry involved a window rather than a broken brick wall. Although in rendering his judgment the motions judge stated that the method of entry in the March 17 incident was through a brick wall, the judge indicated that he was placing a greater emphasis upon the facts that the same store was involved at the same time in the early morning. Furthermore, the proof at trial established that the attempted method of entry during the second incident of July 26 was by a broken brick wall *directly below* the window used in the first crime. The window used in the March 17 break-in had been bricked up shortly after the first crime as a preventive measure.

The final evidence presented at trial did not so greatly deviate from that proffered at the pretrial severance hearing so as to blemish that proceeding. We find that the incorrect information concerning the method of entry played a minor role in Judge Mencher's ultimate decision and that this did not preclude him from properly exercising his discretion in ruling upon appellant's pretrial motion for severance.

 B. Appellant next asserts the classic prejudicial joinder arguments in challenging the denial of his pretrial motion for severance. This court has consistently held that there is a presumption in favor of joinder because joint trials "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *Carpenter v. United States,* D.C.App., 430 A.2d 496, 502 (1981); *Johnson v. United States,* D.C.App., 398 A.2d 354, 367 (1979). An order denying severance under Rule 14 may be reversed only upon a clear showing of abuse of discretion. *Winestock v. United States,* D.C.App., 429 A.2d 519, 526 (1981); *Bittle v. United States,* D.C.App., 410 A.2d 1383, 1386 (1980). As we recently stated in *Winestock, supra* :

> In order to establish that the trial judge has abused his discretion in denying him a severance, a defendant must show "the most compelling prejudice," *United States v. Rhodes,* 569 F.2d 384, 390 (5th Cir. 1978), from which "the court would be unable to afford protection" if both offenses were tried together. *United States v. Swanson,* 572 F.2d 523, 528 (5th Cir. 1978). That burden is a "difficult" one. *United States v. Harris,* 542 F.2d 1283, 1312 (7th Cir. 1976). It is not sufficient to show that the defendant would have a better chance of acquittal if the charges were tried separately. *United States v. Lord,* 565 F.2d 831, 839 (2d Cir. 1977). [*Id.* at 527.]

*See also United States v. Morris,* 647 F.2d 568, 570 n.3 (5th Cir. 1981) ("specific and compelling" prejudice); *Gustave v. United*

*States,* 627 F.2d 901, 905 n.3 (9th Cir. 1980) ("heavy burden imposed by law in obtaining a severance").

When joinder of offenses is based on the fact that the crimes are of a "similar character," as here, a motion to sever "should be granted unless (1) *the evidence as to each offense is separate and distinct, and thus unlikely to be amalgamated in the jury's mind into a single inculpatory mass,* or (2) the evidence of each of the joined crimes would be admissible at the separate trial of the others." *Bridges v. United States,* D.C.App., 381 A.2d 1073, 1075 (1977) (emphasis added); *Evans v. United States,* D.C.App., 392 A.2d 1015, 1020 (1978).

Because we find that the evidence concerning each incident was "separate and distinct," and without reaching the question of mutual admissibility, we conclude that the motions judge did not clearly abuse his discretion in denying appellant's motion for severance. *Winestock, supra* at 527; *Tinsley v. United States,* D.C.App., 368 A.2d 531 (1976); *Drew v. United States, supra.*

Further, appellant raised no question concerning the propriety of the court's instructions regarding each offense, and he failed to renew his pretrial motion for severance once the testimony at trial established that the method of entry during the first incident was by a window, which differed from the evidence presented during the severance motion.

Finally, and we believe most significantly, the jury's conviction on the lesser-included offense of attempted burglary and acquittal on the petit larceny and destruction of property charges indicates that the jury was able to consider the evidence of each offense independently. As we stated in *Bowyer v. United States,* D.C.App., 422 A.2d 973, 977 (1980): "There was little likelihood of the charges being confused or treated as one event." *See Horton v. United States,* D.C.App., 377 A.2d 390, 393 (1977).

Because we find that the evidence of these events was separate and distinct and did not create confusion in the minds of the jurors during the trial, we believe it unnecessary to determine whether or not the evidence was reciprocally admissible, since

> courts, including our own, have found ... no prejudicial effect from joinder when the evidence of each crime is simple and distinct, even though such evidence might not have been admissible in separate trials .... [*Arnold v. United States,* D.C.App., 358 A.2d 335, 338 (1976), quoting *Drew v. United States, supra* [118 U.S.App.D.C.] at 17, 331 F.2d at 91.]

### III

The second issue raised on appeal concerns the proper interpretation to be given to the words "prior to trial" for purposes of filing enhanced penalty papers pursuant to D.C.Code 1973, § 23–111(a)(1). That section provides in pertinent part:

> No person who stands convicted of an offense under the laws of the District of Columbia shall be sentenced to increased punishment by reason of one or more previous convictions, unless *prior to trial* or before entry of a plea of guilty, the United States Attorney or the Corporation Counsel, as the case may be, files an information with the clerk of the court, and serves a copy of such information on the person or counsel for the person, stating in writing the previous convictions to be relied upon. [Emphasis added.]

This case was called to trial on June 20, 1980. Voir dire was conducted and the trial jury was selected. However, the jury was *not* sworn in at that time. On June 23, 1980, prior to the swearing of the jury, the government filed informations with the court seeking enhanced penalties, since appellant was a repeat offender and had been previously convicted for four felonies. D.C. Code 1973, §§ 22–104, –104(a). In addition, the government sought an increased penalty pursuant to D.C.Code 1973, § 23–1328 because appellant had committed two of the charged offenses while on release pending trial. Appellant now argues that these en-

hanced penalty papers were not timely filed.[7]

The determination of the appropriate meaning of "prior to trial" for purposes of § 23–111(a)(1) is before the court for the first time. The statute itself does not specify when trial begins,[8] and while the legislative history indicates that this provision received close attention by Congress, the exact meaning of these words was never determined. *See Sanker v. United States*, D.C.App., 374 A.2d 304, 307 (1977).

The original version of the statute, as adopted by the House of Representatives, required that notice of prior convictions should be filed *after conviction* but before sentencing. *See* H.R.Rep.No.91–907, 91st Cong., 2d Sess. 114–15, 171 (1970); *see also* 116 Cong.Rec. 8166 (1970). The House recognized the conflict then existing within the D. C. courts, as the federal District Court required these informations to be filed after conviction but before sentence, *Jackson v. United States*, 95 U.S.App.D.C. 328, 221 F.2d 883 (1955), while in the Court of General Sessions, the information was filed before trial. *See Brandon v. United States*, D.C.App., 239 A.2d 159 (1968). The

House resolved the conflict by requiring the prosecutor to file the information of previous convictions after the trial but before sentencing. In doing so, the House Committee "was aware of the time problems the prosecutor faces in determining the complete criminal record of a defendant and obtaining certified copies of prior convictions." H.R.Rep.No.91–907, *supra* at 115, *citing Epperson v. United States*, 125 U.S. App.D.C. 303, 305, 371 F.2d 956, 958 (1967). This Report also states that the Committee believed that

> pretrial notice to the defendant of his prior record of convictions serves no useful purpose since the defendant is already aware of his own criminal record and the issue of recidivism is not a proper issue in the determination of the defendant's guilt or innocence. [*Id.*]

The Senate Committee considered this statute as part of a separate bill presently before them concerning the revision of criminal law and procedure in the District of Columbia. S.Rep.No.91–538, 91st Cong., 1st Sess. 10 (1969); Bill No. S.2869. Under S.2869, the increased penalty laws could not be applied

---

7. Only the informations filed pursuant to D.C. Code 1973, §§ 22–104 and 104(a) are under consideration at this time. D.C.Code 1973, § 23–111 applies to "increased punishment by reason of one or more previous convictions," and it does not govern the imposition of enhanced punishment upon "release offenders." D.C.Code 1973, § 23–1328. We have held that certain procedural safeguards such as notice and proof of release status must be afforded defendants sentenced as release offenders. *Tansimore v. United States*, D.C.App., 355 A.2d 799, 803–05 (1976).

8. Jury trials are deemed to "begin at different times depending upon the purpose to be served by such a determination. In determining when jeopardy first attaches for double jeopardy considerations, the Supreme Court has held that jeopardy does not attach until a jury is "empaneled and sworn." *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975).

> [S]ince the bar against double jeopardy is meant in part to protect defendants from undergoing the anguish and public humiliation of a second trial, it is eminently sensible

to conclude that this emotional and psychological harm materializes at a point when members of the public are selected to sit in judgment of a defendant. [*Greenwood v. Stevenson*, 88 F.R.D. 225, 228 (D.R.I.1980).]

For purposes of the federal removal statute, 28 U.S.C. §§ 1443, 1446(c), which requires the removal petition to be filed any time "before trial," courts have held that the phrase "before trial" must be construed to mean "before proceedings for empaneling a jury." *State of New Jersey v. Chesimard*, 555 F.2d 63, 65 n.1 (3d Cir. 1977); *United States ex rel. Walker v. Gunn*, 511 F.2d 1024 (9th Cir.), *cert. denied*, 423 U.S. 849, 96 S.Ct. 91, 46 L.Ed.2d 72 (1975). For purposes of Rule 68 of the Federal Rules of Civil Procedure, whereby a defending party may, at any time more than ten days "prior to trial," serve on the opposing party an offer of judgment, courts have held that trial "begins" when a trial judge calls the proceedings to order and actually commences to hear the case although this may be well after the jury has been selected and sworn. *Greenwood v. Stevenson, supra* at 229.

unless the defendant was informed of the prior convictions to be relied on prior to the entering of his plea, if he pleads guilty, or, in all other cases (notably of pleas of not guilty), prior to trial. The information regarding prior conviction—evidencing the Government's intent to prosecute the defendant as a repeated offender—must be stated separately, not in the charging indictment or formal misdemeanor information, and it must be filed as well with the court. [*Id.*]

The Senate was apparently concerned with notice to the defendant, and it took precautions to assure that the possibility of increased punishment was brought to the defendant's attention by requiring that enhanced penalty papers be filed separately with the court.

This section of the proposed statute was "intended to embrace . . . certain minimum requirements" outlined by District of Columbia case law, especially *Brandon v. United States, supra*; S.Rep.No.91–538, *supra* at 10. While this report did not specify when trial begins, the purposes of the filing requirements were discussed.

> In revising the procedures to establish previous convictions, the Senate District Committee was principally concerned with providing the accused with notice before trial of the Government's intention to prosecute the defendant as a repeat offender. Reasserted in *Brandon v. United States*, [*supra*], the requirement of such notice, in the committee's opinion, merely fulfills the right of an accused, under the fifth and sixth amendments of the Constitution, to be informed before trial of the nature of the charges against him. Moreover, as a matter of legislative policy, the District Committee has taken cognizance of, first, the importance of permitting the accused to determine intelligently, with foreknowledge of the risk which the instant litigation poses, both how to plead and how or to what extent to defend; and, secondly, the unfairness, possibly rising to the level of a

denial of fifth amendment due process, or surprising the defendant after trial with "stakes" 50 percent greater than he might have supposed, or possibly many times greater in the case of the indeterminate sentence without limitation. [S.Rep.No.91–538, *supra* at 11–12.]

In conference, the Senate version prevailed, and the prosecutor was required to file the information prior to trial or before the entry of a plea of guilty. *See* H.R.Rep. No.91–1303, 91st Cong., 2d Sess. 234 (1970).

> D.C.Code section 23–111 as approved by the conference establishes an important new safeguard for defendants who may be subjected to increased, recidivist penalties following conviction. The House provision permitted notice of reliance upon prior convictions to be given following conviction. However, unless such notice precedes trial, a defendant cannot assess the consequences of his pleading or defending at trial. The conference ultimately adopted the substance of a provision originating with the Senate D. C. Committee. The Senate provision, now in the conference report, requires that notice of prior convictions to be relied upon be given *pretrial*, as a precondition for imposing any recidivist penalty. The Senate provision is consistent with the recent decision of the District of Columbia Court of Appeals in *Brandon v. United States*, [*supra*]. [Staff of Senate Comm. on District of Columbia, 91st Cong., 2d Sess., Statement of Managers on the Part of the Senate Submitted Regarding the Conference Action Upon S. 2601 at 23. (Comm. Print 1970).]

The adoption of the Senate version following the conference strongly suggests the conferees' belief that the House version would not allow the defendant the "notice" necessary to assess the consequences of pleading guilty or defending at trial. Further, the Conference Report indicates that section 23–111 was amended to (1) allow the court to grant a reasonable continuance upon a showing by the prosecution that

with due diligence it was not able to obtain before trial or entry of guilty plea the facts regarding prior convictions, and (2) permit clerical mistakes in the information to be amended at any time before pronouncement of the sentence. H.R.Rep.No.91–1303, *supra* at 234. Apparently, the House conferees believed that the amendment adopted by the Conference adequately addressed the House Committee's concern about "the time problems that the prosecutor faces in determining the complete criminal record of a defendant and obtaining certified copies of prior convictions." If the prosecutor has been unable to complete a defendant's criminal history after the exercise of "due diligence," the court may "postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts." D.C.Code 1973, § 23–111(a)(1).

The purpose of the statute is twofold: (1) to give notice to the defendant so that he may reasonably assess whether to plead guilty or proceed to trial, and (2) to avoid the "unfairness" of increasing the potential punishment after the trial has begun. The first seems to have been of ultimate concern to the Congress. In light of these two well-founded purposes, and taking account of the strong legislative intent to provide a "new safeguard" to criminal defendants who may be subjected to increased, recidivist penalties following conviction, we conclude that informations seeking enhanced penalties must be filed *before* the process of selecting a jury has started in order to comply with the requirement of filing such informations "prior to trial" as called for by D.C.Code 1973, § 23–111(a)(1).

A number of state courts have adopted the view that, for general purposes, "the trial begins when the jury is called into the box for examination as to their qualifications and . . . the calling of a jury is part of the trial." *Wilhite v. Agbayani,* 2 Ill. App.2d 29, 33, 118 N.E.2d 440, 442 (1954); *People v. Heidelberg,* 33 Ill.App.3d 574, 595, 338 N.E.2d 56, 73 (1975) (adopting this definition for purposes of interpreting federal removal statute, 28 U.S.C. § 1443); *People v. Williams,* 59 Ill.2d 402, 320 N.E.2d 849 (1974); *Coachella Valley County Water District v. Dreyfuss,* 91 Cal.App.3d 949, 154 Cal.Rptr. 467 (1979) (that impanelment of jury is part of the trial comports with "common understanding" of lawyers and judges); *State v. Johnson,* 363 So.2d 458, 461 (La.Sup.Ct.1978); *Jeffries v. Municipal Court of City of Tulsa,* 536 P.2d 1313, 1316 (Okla.Ct.App.1975).

In *Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), and *Lewis v. United States,* 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), the Supreme Court, in dicta, addressed the issue of a defendant's right to be present during the selection of the jury. *Hopt* concerned a violation of a territorial statute which outlined a certain procedure for determining challenges for cause. *Hopt, supra,* 110 U.S. at 576, 4 S.Ct. at 203. *Lewis* reversed a conviction because the defendant was not present until after the jury had been selected. *Lewis, supra,* 146 U.S. at 375–76, 13 S.Ct. at 138. While these cases often have been incorrectly cited for the proposition that there is a constitutional right to presence during jury selection,[9] the Court, in determining when a trial begins for purposes of triggering a defendant's right to presence, stated in *Hopt* that "the trial commences at least from the time when the work of impaneling the jury begins." *Hopt, supra,* 110 U.S. at 578, 4 S.Ct. at 204.

Federal courts have examined *Hopt* and *Lewis* for guidance in interpreting Fed.R.

---

**9.** Subsequent decisions have established that *Hopt* and *Lewis,* as far as they defined a defendant's right to presence during jury selection, were based on the common law privilege of presence and not on the Constitution. *Snyder v. Massachusetts,* 291 U.S. 97, 117, 54 S.Ct. 330, 336, 78 L.Ed. 674 (1934); *Fillippon v. Albion Vein Slate Co.,* 250 U.S. 76, 81, 39 S.Ct. 435, 436, 63 L.Ed. 853 (1919); *Shields v. United States,* 273 U.S. 583, 589, 47 S.Ct. 478, 479, 71 L.Ed. 787 (1927). However, the Court has stated that a defendant only has a constitutional right to be present at stages of the trial where fundamental fairness might be thwarted by his absence. *Faretta v. California,* 422 U.S. 806, 816, 95 S.Ct. 2525, 2531, 45 L.Ed.2d 562 (1975).

Crim.P. 43(a), which expressly requires the defendant's presence during the impaneling of the jury. *United States v. Brown*, 571 F.2d 980, 986 (6th Cir. 1978); *United States v. Alessandrello*, 637 F.2d 131, 138 (3d Cir. 1980); *United States v. Gregorio*, 497 F.2d 1253, 1257 (4th Cir.), *cert. denied*, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974). These courts have concluded that Fed.R. Crim.P. 43(a) establishes that defendants have an "explicit, unqualified right" to be present at the jury impaneling and that the Federal Rule is "more far-reaching than the right of presence protected by the Constitution." *Alessandrello, supra* at 138; *Brown, supra* at 986 n.5. These decisions clearly specify that a trial "begins" with the process of impaneling the jury for purposes of Rule 43 based upon the general assumption that a defendant may be able to assist his counsel in the selection of the jurors. *Lewis, supra* 146 U.S. at 373, 13 S.Ct. at 137; *Hopt, supra* 110 U.S. at 578, 4 S.Ct. at 204.[10]

■ These decisions support our holding that the requirement for filing informations seeking enhanced punishment in a jury trial "prior to trial or before entry of a plea of guilty" pursuant to D.C.Code 1973, § 23–111(a)(1) should be construed to mean *before* the process of impaneling the jury has begun.[11] In two recent cases involving the application of § 23–111(a), although the court did not discuss the meaning of the phrase "prior to trial," the facts indicate support for our present holding. In *Scott v. United States*, D.C.App., 392 A.2d 4 (1978), the defendant argued on appeal that the information of prior felony convictions had not been filed "prior to trial." In rejecting this contention, we relied upon the trial court's finding that "the requirements of D.C.Code 1973, § 23–111(a) were adequately complied with when on the day of trial immediately prior to trial, the Assistant United States Attorney filed with the court's clerk and served on the defendant an Information as to the previous felony convictions." We found this finding to be corroborated by the physical location of the information in the record in front of the trial material. *Id.* at 6 n.2. In *Jones v. United States*, D.C.App., 416 A.2d 1236, 1237 (1980), we found that the requirements of § 23–111(a)(2) were satisfied when the government filed two informations which could have resulted in enhanced punishment *prior to arraignment.* We decline to specify an exact number of days before jury impaneling begins by which time the prosecution must file enhanced penalty papers, since such a determination is not for the courts but is better left to Congress.[12]

■ However, while we conclude that the prosecutor must file informations seeking enhanced punishment prior to the start of the impaneling of the jury, we believe

10. Similarly, we have held that our Super.Ct. Cr.R. 43, which is substantially identical to its federal counterpart, also establishes that the impaneling of the jury is the "beginning stage of trial." *Campbell v. United States*, D.C.App., 295 A.2d 498 (1972), *citing Hopt v. Utah, supra.* Superior Court rules are to be interpreted in light of the federal rules when they are literally or substantially identical. *Id.*

11. This conclusion has no adverse impact on the situation in which a defendant chooses to go to trial without a jury. The term "prior to trial" in that context simply means before the trial judge has undertaken an examination of the facts for the purpose of determining the controversy. *See* 75 Am.Jur.2d, *Trials*, § 3 (1974); *United States v. Gill*, 623 F.2d 540 (8th Cir. 1980), where the court applied the sentence enhancement provisions of 21 U.S.C. § 851(a)(1) to a nonjury trial held on a set of stipulated facts. The court held that the trial commenced on the date upon which the trial

court approved defendant's waiver of a jury trial, received written stipulations and took the case under submission relying upon Fed.R. Crim.P. 23(a) and *Dixon v. United States*, 110 U.S.App.D.C. 275, 276, 292 F.2d 768, 769 (1961).

12. Significantly, Congress failed to specify exact time periods for filing informations of prior convictions seeking enhanced punishment in two similar statutes, 18 U.S.C. § 3575 and 21 U.S.C. § 849. Those statutes merely require that such informations be filed "a reasonable time before trial." Further, although part of the same legislation as 21 U.S.C. § 849, 21 U.S.C. § 851 requires the prosecutor to file an information involving enhanced punishment "before trial." The legislative history of this statute reveals no explanation for the difference in language in these two provisions.

that the prosecutor's failure to do so in this case constituted harmless error. *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).[13] Here, the record reveals that appellant was fully aware of the government's intention to file informations seeking enhanced punishment, thus allowing him an adequate opportunity to determine whether to plead guilty or proceed to trial. The overriding statutory purpose of providing a defendant "notice" of the possibility of enhanced punishment was clearly satisfied in this case.

In summary, we affirm appellant's conviction of second-degree burglary and the trial court's sentence of two to six years for that conviction. We remand for resentencing in accordance with D.C.Code 1973, § 23–111(b) as to appellant's conviction of attempted burglary.

*So ordered.*

---

13. The record here indicates that the government acted in accordance with its interpretation of the statute by filing the enhanced penalty papers before the jury was *sworn* but after it had been selected. In addition, the trial court jacket indicates that, at a status hearing sometime before March 7, 1980 (one of appellant's scheduled trial dates), the government made appellant a plea offer. While the exact date of this status hearing is difficult to discern from the record, it appears likely that it occurred on February 12, 1980. Thus, appellant would have been aware of the government's intention to file repeat and release offender papers for more than four months prior to trial. Finally, the sentencing transcript indicates that the court only relied upon the information seeking enhanced punishment pursuant to § 22–104(a) in sentencing appellant on the *attempted burglary charge.* The court did *not* rely on this information in sentencing appellant on the burglary charge. We have already determined that the case should be remanded for resentencing on the attempted burglary charge due to the trial court's failure to follow the requirements of ·§ 23–111(b).