Flossie N. **ROBINSON** & Grady **Butler, Appellants,**

v.

**UNITED STATES, Appellee.**

Nos. 95–CF–852, 97–CO– 1946 & 95–CF–1128.

District of Columbia Court of Appeals.

Argued June 20, 2000.
Decided July 27, 2000.

James Patrick Griffin, appointed by the court, for appellant Flossie N. Robinson.

Richard A. Seligman, Washington, DC, appointed by the court, for appellant Grady Butler.

Jonathan M. Malis, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and Roy W. McLeese, III, Assis-

tant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and REID and GLICKMAN, Associate Judges.

REID, Associate Judge:

After a jury trial, appellants Flossie N. Robinson and Grady Butler were convicted of distribution of heroin, in violation of D.C.Code § 33–541 (1998).[1] Both filed a timely notice of appeal, challenging various rulings of the trial court. In addition, Robinson filed a D.C.Code § 23–110 (1996) motion, asserting ineffectiveness of trial counsel. The motion was denied, and Robinson filed a timely appeal. We affirm the convictions of Robinson and Butler, and the trial court's denial of Robinson's § 23–110 motion. However, we remand Butler's case to the trial court for resentencing because we conclude that the trial court erred by imposing the enhancing seven year mandatory minimum sentence on him where the government failed to provide the requisite notice of intention to enhance the penalty under D.C.Code § 23–111.

## FACTUAL SUMMARY

According to the government's evidence, on May 17, 1993, four United States Park Police investigators or officers were involved in an undercover drug operation, around 5:50 p.m., in the area of 11th and P Streets, N.W. in the District of Columbia. At the time, Officer Katherine P. Heller, a six-year veteran, had been assigned to the narcotics and vice unit for two years. The area of 11th and P Streets was an open drug market and had been under police surveillance since April 1993. While she was on duty, Officer Heller saw Butler, Robinson and another woman, Wendy Borum, standing on the corner. Officer Heller knew both Butler and Borum from "previous contact." Butler called Officer Heller over, and she asked for two persons

by their first names. Butler indicated that the two persons were not around, and Borum asked: "What do you need?" Officer Heller asked for a particular brand of heroin. In response to Borum's request for money, Officer Heller gave her $40.00 for the drug purchase. Borum took the money to a woman who was seated on some steps down the street. The woman refused to give Borum any drugs "because [she] didn't know [the officer]." Butler then told Robinson "to take care of [the officer]."

After Butler told Robinson to take care of the officer, Borum instructed Officer Heller to go to a bus stop and wait. Borum followed and again asked Officer Heller for money. The officer gave her $40.00 in marked currency. Borum then approached Robinson. Officer Heller testified that Borum and Robinson "argued shortly and then there was some on-hand movement ... and then after there was the arm movement." Officer Heller said that she "couldn't see what was happening between [Borum and Robinson] but [she] did see that they moved their hands out and back in." Borum immediately returned to where Officer Heller was standing "and handed [the officer] two small little ziplocs containing suspected heroin which later field tested positive for opiates."

After the transaction ended, Officer Heller made contact with Lieutenant Ronald Schmidt who had used "seven power binoculars" to watch Officer Heller's interaction with Butler, Robinson and Borum from his nearby undercover observation post. He picked up Officer Heller near 11th and Rhode Island Avenue, N.W., and they returned to the 11th and P Street area where Officer Heller identified Butler, Borum and Robinson within a couple of minutes after being picked up. Look-out descriptions then were given to the officers who arrested the perpetrators. Officer Heller stated at trial that Robinson "had

---

1. Both Robinson and Butler were sentenced to a prison term of seven to twenty-one years, including a mandatory minimum term of seven years.

[a] black lycra jumpsuit on with ... red piping [or trim] and she—also was carrying a black sequin · purse plus she was wearing a pair of sunglasses." Consistent with Officer Heller's description, Lt. Schmidt testified that Robinson wore "like a jumpsuit—like a spandex black jumpsuit—type of clothing with like a ... red piping on the edges."

Officers Michael Smith and David Fennimore, "a two man back-up team" assigned "to ID targets of the [undercover] investigation," received a communication from Lt. Schmidt directing them to identify Butler, whom the back-up team knew, and the woman later identified as Robinson. Both officers testified at trial concerning the look-out descriptions they received from Lt. Schmidt. Officer Smith asserted that Ms. Robinson was described as wearing "[b]lue or black—sweat suit with sparkles—and [carrying] a purse." Further, he stated that she had "reddish brown hair." Officer Fennimore said the look-out description for Robinson was a black female "wearing a black spandex or lycra jumpsuit...." At approximately 6:45 p.m., Officers Smith and Fennimore stopped Butler and Robinson. According to Officer Fennimore, Robinson "was wearing a black spandex lycra jumpsuit and it had gold flecks [or speckles] on both ... outer thighs of the—jumpsuit," and her hair was "an off reddish color." No other people in the area matched the description of Robinson. Butler and Robinson were arrested, and later were convicted of distribution of heroin.

## ANALYSIS

### Butler's Enhanced Sentence Issue

■ Butler argues that the trial court erred by not ruling that the government

failed to satisfy the notice requirement, set forth in § 23–111,[2] for enhancing his sentence; therefore, the seven year mandatory minimum sentence provided for in § 33–541[3] was improperly imposed on him. The government contends that the trial court did not commit plain error by imposing the seven year mandatory minimum sentence, and that, prior to the hearing on the suppression motion, Butler received notice that the government intended to seek enhancement of his sentence.

The record before us shows that on the morning of February 23, 1995, the court and counsel for Robinson were engaged in a discussion about pre-trial motions. After a brief discussion of a motion to suppress a "ride by" identification of Robinson, the court inquired as to what other motions "need[ed] to be dealt with in an evidentiary hearing?" Furthermore, the trial court asked whether Robinson "ha[d] other cases?" After additional dialogue with counsel for Robinson, the transcript shows the following statements:

> THE COURT: All right. Well, there's been no notice, I mean, by the Government, Ms. Robinson, that they intend to bring in facts relating to any previous convictions—the case that you have. Only—as far as I know, Isn't that right, Counsel?
>
> [GOVERNMENT COUNSEL]: I'll just be filing repeat representative [sic] on that note.
>
> THE COURT: And the only use of your previous conviction would be if you should testify and they'll be able to ask

2. Section 23–111(a)(1) provides in pertinent part:
 No person who stands convicted of an offense under the laws of the District of Columbia shall be sentenced to increased punishment by reason of one or more previous convictions, unless prior to trial or before entry of a plea of guilty, the United States attorney or the Corporation Counsel, as the

case may be, files an information with the clerk of the court, and serves a copy of such ·information on the person or counsel for the person, stating in writing the previous convictions to be relied upon....

3. The subsection of § 33–541 under which Butler's sentence was enhanced has been repealed.

you about it on—on the issue of believability of your testimony in court. . . .

These excerpts reveal no explicit announcement, at the suppression hearing, of the government's intent to file enhancement of sentencing papers for Butler.

Jurors apparently were brought into the courtroom for the jury voir dire process in the late morning of February 23, 1995. The trial court indicated that before questions were posed to the prospective jurors, the oath would be administered. Government counsel then stated: "Your Honor, may I just briefly approach?" The trial judge responded: "Let me do the oath first." After the oath was administered, the trial judge called counsel to the bench and the following exchange took place:

> [GOVERNMENT COUNSEL]: Your Honor, I apologize. I forgot to file the repeat papers and I don't recall if it was before the actual Jury was sworn for the 13 or now. If—
>
> THE COURT: We can't do it at this moment because I don't want you doing it while the Jury is here. I haven't sworn them in for trial. We'll just have to get to that issue at that time. I'm not going to deal with it right now.

After indicating that he would not "deal with" the enhancement issue at that time, the trial judge proceeded to conduct the voir dire examination. After the persons selected for the jury were seated, but before they were sworn in, the trial court held a bench conference. Government counsel stated: "I didn't know if Your Honor was just going to give a little break. I just wanted some time to file the repeat papers." The trial judge indicated that he would take a break. Counsel for Robinson asked: "[C]an we swear in the jury first?" The transcripts show that the jury left the courtroom at 3:39 p.m. without being sworn. After the jury left, government counsel stated: "Your Honor, at this time I will file the repeat papers for Mr. Butler. I have copies for defense counsel." The trial judge responded that he would "allow them to be filed," and that if there were

objections, they would be considered if Butler was convicted. The jury returned to the courtroom at 4:05 p.m. and was sworn.

The government concedes that appellant Butler's enhancement information was not timely filed within the meaning of D.C.Code § 23–111; however, the government contends that this was a "technical violation which did not constitute plain error." Under *Arnold v. United States*, 443 A.2d 1318, 1326 (D.C.1982), "informations seeking enhanced penalties must be filed *before* the process of selecting a jury has started in order to comply with the requirement of filing such informations 'prior to trial' as called for by [§ 23–111(a)(1) ]." Indeed, it is clear from the transcripts before us that the government did not file the enhancement information regarding Butler before the jury selection process began. Nonetheless, the government argues that "the technical violation of § 23–111 did not amount to plain error." In *Arnold, supra*, where appellant apparently did not object to the government's filing of enhancement informations, we determined that the government's error in failing to file the required information before the jury selection process began was harmless, because:

> [T]he record reveals that appellant was fully aware of the government's intention to file informations seeking enhanced punishment, thus allowing him an adequate opportunity to determine whether to plead guilty or proceed to trial.

*Id.* at 1328. Here, the government argues that "[t]he prosecutor's intention to file the enhancement informations was unmistakable before the process of selecting the jury had started . . .," and that Butler "received notice of the government's intention prior to the court's ruling on the suppression motion, which was likely more important to his decision whether to plead guilty."

We conclude that while the issue of whether the government intended to file enhancement papers with respect to Robinson was mentioned at the suppression hearing, the enhancement issue with respect to Butler was not broached. Nor was it raised prior to the commencement of the jury selection process. Therefore, the government failed to comply with the strictures of § 23–111. We have "'repeatedly mandated strict compliance with the procedures set forth in ...' § 23–111." *Lucas v. United States*, 602 A.2d 1107, 1110 (D.C.1992) (quoting *Boswell v. United States*, 511 A.2d 29, 31 (D.C.1986)) (other citations omitted). Even if we apply the plain error rule, as the government argues we should do, it is clear that the trial judge plainly erred in imposing an enhancement penalty when the government had not complied with the dictates of D.C.Code § 23–111, as interpreted in *Arnold, supra*. Moreover, in applying to this case either the plain error, or the harmless error rule usually applied to cases involving § 23–111, *see*, for example, *Logan v. United States*, 591 A.2d 850, 853 (D.C.1991); *Arnold, supra*, 443 A.2d at 1328, we are unable to conclude either that: (1) the error was not "'so clearly prejudicial to [Butler's] substantial rights as to jeopardize the very fairness and integrity of the trial,'" *Foreman v. United States*, 633 A.2d 792, 795 (D.C.1993) (quoting *Harris v. United States*, 602 A.2d 154, 159 (D.C. 1992) (en banc) (other quotation omitted)); or that (2) the error was harmless under *Arnold, supra*.

■ Here, there is no record evidence that Butler was placed on notice of the government's intent to file enhancement papers in time to afford him "an adequate opportunity to determine whether to plead guilty or proceed to trial."[4] *See Arnold, supra*, 443 A.2d at 1328. Thus, the government has failed to show that the purposes of the requirements of D.C.Code

§ 23–111 were met. In *Key v. United States*, 587 A.2d 1072 (D.C.1991), we reiterated that the purposes of the requirements set forth in § 23–111:

> are two-fold: (1) to give the defendant notice so that he may make an informed decision whether to proceed with trial or plead guilty, and (2) to "avoid the 'unfairness of increasing the potential punishment after the trial has begun.'"

*Id.* at 1073–74 (quoting *Arnold, supra*, 443 A.2d at 1326). In addition, as we said in *Lucas, supra*: "In view of the potential harshness of the result of enhanced sentences, actual notice to the defendant of the prior convictions to be relied upon by the government is important." 602 A.2d at 1111.

In this case, the government argues that Butler was aware of his past conviction, but we discounted that type of argument in *Lucas*:

> [W]e deem irrelevant the fact that a defendant may be aware that the government is aware of his or her prior convictions. The pretrial knowledge by the defendant that is "critical" is, as the government states, whether the government intends to rely on the defendant's prior convictions for purposes of sentencing enhancement under § 33–541.

*Id.* (footnote omitted). Moreover, Butler's case does not fall into the type of "technical error" cases in which we have found harmless error. *See Coleman v. United States*, 628 A.2d 1005, 1009 (D.C.1993) (enhancement information incorrectly listed prior conviction as armed robbery rather than robbery; court of prior conviction also incorrectly listed); *Logan, supra*, 591 A.2d at 853 (court of prior conviction incorrectly listed in the enhancement information). In contrast to these types of technical error cases, in Butler's case, the government did not give technically incorrect information about its intent to rely on a past conviction to enhance Butler's pen-

---

4. The record shows no evidence that Butler was offered a plea agreement, or considered whether he should enter a guilty plea because

the government intended to seek an enhanced penalty.

alty should he be convicted; it gave no notice at all prior to the commencement of the jury selection process.

Accordingly, for the foregoing reasons, we are constrained to remand Butler's case to the trial court for resentencing because the trial court improperly imposed the enhancing seven year mandatory minimum penalty.

### Robinson's Enhancement Issue

■ Robinson argues that the trial court erred in imposing a sentence on her which was enhanced by seven years under the seven year mandatory minimum provision set forth in § 33–541 [5] prior to its repeal. She claims that the government's enhancement information concerned a prior drug possession rather than a prior drug distribution conviction. The government contends that the trial court properly applied the enhancement penalty under our decisions in *Gilmore v. United States*, 699 A.2d 1130 (D.C.1997) (*Gilmore II*); *Gilmore v. United States*, 648 A.2d 944 (D.C.1994) (*Gilmore I*). We agree. Our decision in *Gilmore I* compels us to reject Robinson's argument because "the plain language of [§ 33–541] refutes [Robinson's] contention." *Id.* at 945. In *Gilmore II,* as here, the government sought to enhance appellant's sentence for distribution of heroin with a prior conviction for possession of heroin. Gilmore in turn "argued that because his previous conviction was only for a misdemeanor, this 'was his first felony conviction, and he should not have been sentenced as a second offender.'" *Id.* at 1131. In rejecting his argument, we reiterated that: "the statute as properly construed provides that a prior misdemeanor drug conviction under section 33–541(d) may be used to enhance a mandatory minimum sentence...." *Id.* at 1133 (referencing *Gilmore I supra*) (footnote omitted). Accordingly, we are constrained to reject Robinson's argument.

5. The enhancing seven year mandatory minimum sentence provision previously appeared in the D.C.Code as § 33–541(c)(1)(A–1) (1993). It was repealed in 1995. In *Holiday v. United States*, 683 A.2d 61, 80 (D.C.1996),

### Robinson's and Butler's Other Arguments

■ We conclude that Robinson's and Butler's other arguments are unpersuasive, and therefore, we dispose of them summarily. Both Robinson and Butler maintain that the trial court erred by failing to sentence them under the addict exception set forth in § 33–541(c)(2) which has been repealed. The question as to whether the addict exception should be used in sentencing is committed to "the sound discretion of the trial judge...." *Stroman v. United States*, 606 A.2d 767, 770 (1992) (citing *Grant v. United States*, 509 A.2d 1147, 1154 (D.C.1986)). In exercising its discretion, the trial court made credibility determinations and weighed the evidence submitted by Butler and Robinson. The court discredited the testimony of Butler, and in her testimony, Robinson asserted that, in addition to some drug usage, she drank alcohol, at least one pint a day. On this record, we see no reason to disturb the trial court's decision not to use the addict exception in sentencing Robinson and Butler.

■ Robinson contends that the trial court erred in denying her motion to suppress her identification. She argues that the Park Police officers did not have reasonable, articulable suspicion to stop her, and that the ride by identification procedure was unduly suggestive, essentially because the officers' description of what she was wearing differed since two officers said her jump suit had "red trim or piping" and two mentioned "gold speckles." Our review of the court's disposition of a motion to suppress " 'is limited.' " *Thompson v. United States*, 745 A.2d 308, 312 (D.C. 2000) (quoting *Lawrence v. United States*, 566 A.2d 57, 60 (D.C.1989)). Furthermore, in *United States v. Turner*, 699 A.2d 1125 (D.C.1997), we said:

we concluded that the mandatory minimum sentence provision was "preserve[d] ... in all cases[, as here,] where the offense was committed before May 25, 1995."

Because we examine the totality of the circumstances and require far less than certainty, we have routinely held that an imperfect description, coupled with close spatial and temporal proximity between the reported crime and seizure, justifies a *Terry* [6] stop.

*Id.* at 1129 (citing *King v. United States,* 550 A.2d 348, 357 (D.C.1988)) (other citations omitted). Although the officers' descriptions of Robinson's jump suit differed somewhat, we are satisfied that the articulable suspicion of the officers was " 'particularized as to the individual stopped.' " *In re T.L.L.,* 729 A.2d 334, 340 (D.C.1999) (quoting *In re A.S.,* 614 A.2d 534, 537 (D.C.1992) (citations omitted)). Moreover, there was a "close spatial and temporal proximity between the reported crime and seizure," *Turner, supra,* 699 A.2d at 1129, because events surrounding the heroin buy began at 5:50 p.m. and Robinson was stopped and arrested at approximately 6:45 p.m., only about one block from the purchase site.

■ Robinson maintains that the trial judge violated her Fifth and Sixth Amendment constitutional rights by not allowing her "to be present at the bench during voir dire." In *Robinson v. United States,* 448 A.2d 853 (D.C.1982) (*Robinson I* ), we held that the trial court erred in denying appellant's request to be present at the bench for the jury voir dire. In this case, however, Robinson failed to request that she be present, even though as the trial judge found, she was aware of her right to be present at the bench since she was the appellant in *Robinson I.* Under *Welch v. United States,* 466 A.2d 829, 839 (D.C. 1983), by not making a request, Robinson has waived this argument.

■ For the first time, on appeal, Robinson maintains that the trial court abused its discretion in failing to grant her motion, made during trial, to sever her case from that of co-defendant Butler, under Super. Ct. Civ. R. 14. Robinson argues that the cumulative impact of testimony regarding Butler was prejudicial, and that Butler and Borum were targets of an ongoing heroin investigation. On the record before us, we conclude that the trial judge managed the trial in a manner that avoided prejudicial impact on Robinson from the testimony of Butler's witnesses and from her status as a codefendant with Butler. Therefore, we see no abuse of discretion. Indeed, Robinson has not sustained her burden to show "manifest prejudice" with respect to the joinder of her case with that of Butler. *See Elliott v. United States,* 633 A.2d 27, 34–35 (D.C.1993).

■ Robinson argues that the trial court abused its discretion by excluding a videotape of the street scene where the events surrounding the drug transaction took place. Although the videotape was proffered by Butler, Robinson challenges its exclusion on appeal. The trial court excluded the videotape because it "was not taken from the same angles or position [from which Lt. Schmidt] made his observations," and thus the probative value of the videotape would be substantially outweighed by its prejudice because the videotape "would be misleading to the jury...." We conclude that there was no abuse of discretion. *See Gonzalez v. United States,* 697 A.2d 819, 827 (D.C.1997). Butler asserts that the trial court erred by failing to admit into evidence, as a prior inconsistent statement, handwritten notes made by Officer Heller. We conclude that even if the trial court erred in excluding Officer Heller's handwritten notes, the error was harmless because Officer Heller was questioned at length about her notes, and thus, the jury had a basis for determining her credibility. *See Scott v. United States,* 619 A.2d 917, 921 n. 8 (D.C.1993); *Reed v. United States,* 403 A.2d 725, 729 (D.C.1979).

■ We also reject Robinson's and Butler's contention that the trial court erred by not granting their motion for a

6. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

mistrial after the jury sent a note that it was unable to reach a verdict. Towards the end of the day before the note was sent, one of the jurors announced, during deliberations, that he was scheduled to leave the following morning to attend the funeral of his wife's sister's daughter in Miami, Florida. When the trial judge received a note containing this information, he spoke with the juror and asked if the juror could return the next day to continue deliberations. The juror responded: "Yes." The following day, the jury resumed its deliberations and sent the deadlock note to the judge about one and one half hours later. Robinson and Butler moved for a mistrial, but the judge decided to give the anti-deadlock instruction proposed by Judge Gallagher in an appendix to his opinion concurring in *Winters v. United States*, 317 A.2d 530 (D.C.1974) (en banc) (Gallagher, J., concurring). After receiving the instruction, the jury continued its deliberations for more than two and one half hours before reaching its verdict. In applying our standard for determining whether the jury verdict was coerced in this case, we see nothing in the record before us that even suggests coercion. This case is quite different from the facts presented in *Morton v. United States*, 415 A.2d 800, 802–03 (D.C.1980), where the brother of a juror died during jury deliberations and the juror "protested that she was under emotional strain." In this case, there is no indication that the juror manifested emotional strain that threatened the jury's impartial deliberations. Consequently, we are satisfied that the trial court did not abuse its discretion in denying Robinson's and Butler's motion for a mistrial. *See Coleman v. United States*, 515 A.2d 439, 453 (D.C.1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 205 (1987); *see also Smith v. United States*, 542 A.2d 823, 824 (D.C. 1988).

 Robinson challenges the sufficiency of the evidence against her, declaring that the government failed to prove "usable quantity" in .009g of heroin, and did not establish either that there was an actual exchange of money for heroin between Robinson and Borum, or that any pre-recorded money or heroin was found on her person. Viewing the evidence in the light most favorable to the government, as we must, *see Blakeney v. United States*, 653 A.2d 365, 369 n. 3 (D.C.1995), the record shows sufficient evidence to permit a reasonable jury, drawing upon all reasonable inferences, to conclude beyond a reasonable doubt that Robinson aided and abetted the distribution of heroin to Officer Heller, *see Johnson v. United States*, 611 A.2d 41 (D.C.1992); *Boyd v. United States*, 473 A.2d 828, 832 (D.C.1984); and that, under the standard of "usability" in effect at the time of the drug transaction, the government met the "usable quantity" element through the testimony of its witnesses. *See Johnson, supra; Boyd*, 473 A.2d at 832; *Wishop v. United States*, 531 A.2d 1005, 1008 (D.C.1987).

 Finally, Robinson argues that the trial court erred by denying her § 23–110 motion alleging ineffective assistance of counsel. Specifically, she claims that her trial counsel failed to: (1) impeach Officer Heller with her affidavit in support of the arrest warrant; (2) introduce into evidence her driver's license which was issued on the day of the drug transaction; and (3) assert her right to be present at the bench during jury voir dire. The trial court concluded that Robinson's trial counsel made a tactical decision "not to use the affidavit, which described [Robinson] with dark hair, because he felt that since [Robinson] ... had dark hair at trial, use of the affidavit could make the government's case stronger and not help the defense case." With respect to the driver's license, the trial court determined that: "In light of the inconclusive nature of the license in terms of [Robinson's] hair coloring, and the strength of the government's evidence, trial counsel's performance ... did not prejudice defendant." After a hearing regarding Robinson's assertion that trial

counsel's performance was ineffective and prejudicial because her right to be present at the bench during voir dire was not asserted, the trial court found that Robinson did not discuss the voir dire issue with her counsel until the voir dire had been completed, and that she was aware of her right to be present upon request. Furthermore, the trial court concluded that Robinson suffered no prejudice by not being present at the bench during the voir dire. On appeal, Robinson argues that, prior to the jury voir dire, she gave her counsel a copy of *Robinson I* and asked to be present at the bench. This position not only contradicts the trial court's factual findings, but also her own testimony on cross-examination during the hearing on her § 23–110 motion.

■ Under the familiar two prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we conclude that on the record before us counsel's performance was not deficient, and that even if we assume deficient performance, Robinson has not sustained her "heavy burden" to show "prejudice traceable to [her] trial counsel's deficiencies." *Zanders v. United States,* 678 A.2d 556, 569 (D.C.1996). Counsel's decisions regarding Officer Heller's arrest affidavit and Robinson's driver's license were tactical decisions and "[t]actical decisions generally do not result in a finding of ineffective assistance of counsel." *Id.* Moreover, under the prejudice prong of *Strickland, supra,* Robinson " 'must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. 2052). The evidence against Robinson was strong, and in light of *Robinson I,* she was well aware of her right to be at the bench during jury voir dire. Consequently, we affirm the judgment of the trial court concerning Robinson's § 23–110 motion.

Accordingly, for the foregoing reasons, we affirm the judgments of conviction for both Butler and Robinson. However, we remand Butler's case to the trial court for resentencing consistent with this opinion.