# MAURICE KING *v.* STATE OF MARYLAND

[No. 1772, September Term, 1982.]

*Decided October 10, 1983.*

The cause was argued before GILBERT, C. J., and WILNER and BISHOP, JJ.

*Howard L. Cardin,* with whom were *Cardin & Gitomer, P.A.* on the brief, for appellant.

*Stephanie J. Lane, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, W. Charles Rogers, III, Assistant Attorney General, Kurt L. Schmoke, State's Attorney for Baltimore City,* and *Mark S. Cohen* and *Brian Murphy, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

On the evening of July 14, 1981, Baltimore City police officer Charles Gutberlet approached a van stopped at the corner of Fayette and Aisquith Streets. As he looked inside, the person occupying the front passenger seat drew a handgun and pointed it at the officer. Gutberlet promptly alerted other police officers in the area; and, upon doing so, he observed several other armed men in the back of the van discard their weapons, leave the van, and attempt to flee.

One of the men seen departing the van was appellant, who was arrested after he had traveled about ten feet and fell into some bushes. Following the hurried exodus, the police recovered five handguns from the floor of the van.

As a result of that incident and the further fact that appellant had no permit to wear or transport a handgun, appellant was charged with and convicted of unlawfully wearing and transporting a handgun, for which he was sentenced to ten years in prison. The ten-year sentence was based upon

a finding that appellant had previously been convicted of a handgun offense, and thus was a "subsequent offender" eligible for an "enhanced" sentence provided for by Md. Ann. Code art. 27, § 36B (b) (ii).

Appellant raises two issues in this appeal:

"(a) The trial court erred when it sentenced the Appellant as a second offender even though the State failed to comply with Maryland Rule 734.

(b) The trial court erred when it permitted the State to introduce, over objection, records from the Department of Assessments and Taxation and from the Motor Vehicle Administration when they had not been provided to the Appellant during discovery procedures."

We shall address the second claim first.

### (1) *Motor Vehicle And Corporate Records*

The State's case against appellant was based on the inference that he wore, carried, or transported one or more of the guns found inside the van. He was not in possession of a gun when he was arrested outside the van.

Before trial, appellant had moved to suppress as evidence all items recovered from the van on the ground that they were unlawfully seized. In an effort to establish his standing to complain about the search of the van and the seizure of the weapons found in it, appellant conceded at the hearing on his motion (which occurred immediately before the commencement of trial) that (1) the van in question was owned by a corporation known as King & Meredith, Inc., and (2) appellant was the president of that corporation. Having conceded his vicarious connection with the van for the purpose of "standing", he proceeded to elicit some evidence that there was more than one van in the vicinity, this being, we gather, in the nature of groundwork for a trial defense that appellant was in a different van — not the one owned by his corporation in which the weapons were found. Indeed,

appellant tells us in his brief that such was precisely his intended line of defense.

In an effort to meet that anticipated defense, the State, at trial, placed into evidence certified records from the Motor Vehicle Administration and the Department of Assessments and Taxation showing essentially what appellant had willingly conceded the day before — that the van was owned by King & Meredith, Inc. and that appellant was a principal in that corporation.

Appellant objected to these records, which he agreed were otherwise admissible, on the sole ground that they had not been disclosed by the State in its response to his pretrial discovery motion. He acknowledged that he had no evidence that the omission was deliberate or in bad faith. The only prejudice claimed by appellant was that, on the assumption that there would be no evidence regarding ownership of the van, he had intended to call two witnesses to testify that he was not in the van at the time of the incident, and that with the documentary evidence establishing his connection with the van, he would be forced to reconsider his decision to call those witnesses. In fact, the witnesses were not called. The court offered appellant a short continuance in order to ponder the matter, but he declined the offer.

On this record, we find no error in the admission of the certified records.

### (2) *Enhanced Sentence*

Appellant was charged and convicted under Md. Code Ann. art. 27, § 36B (b), which prohibits a person from wearing, carrying, or transporting a handgun about his person or in any vehicle traveling the public roads without a permit to do so. With respect to punishment, § 36B (b) (i) provides that for the first offense, the defendant may be fined from $250 to $2500 and be imprisoned from thirty days to three years. For a second offense — if he has once before been convicted of wearing, carrying, or transporting a handgun in violation of § 36B — § 36B (b) (ii) states that the defendant

"shall be sentenced... for a term of not less than 1 year nor more than 10 years, and it is mandatory upon the court to impose no less than the minimum sentence of 1 year...."

This "enhanced sentence" or "subsequent offender" provision contains two elements, one mandatory and one permissive. It *requires* a minimum sentence of at least one year, which is more than the required minimum but less than the permitted maximum for a first offense; and it *permits* a maximum sentence of ten years, which exceeds the three-year maximum allowed for the first offense.

Maryland Rule 734 places certain conditions on the implementation of "subsequent offender" statutes such as § 36B (b) (ii). It provides, in section c, that "[i]f a *mandatory* sentence is prescribed by law because of a specified previous conviction, the State's Attorney, at least 15 days prior to *sentencing,* shall serve upon the defendant or his counsel a notice of the alleged prior conviction which would require imposition of the mandatory sentence." (Emphasis supplied.) Section b, dealing with *permissive* enhanced sentences, provides that, except as provided in section c,

> "no defendant shall be sentenced as a subsequent offender unless prior to acceptance of a plea of guilty or *nolo contendere* or at least 15 days prior to trial, whichever is earlier, the State's Attorney serves a notice on the defendant or his counsel that the State will seek increased punishment as authorized by law. *The notice shall set forth each prior conviction to be relied upon.*" (Emphasis supplied.)

Appellant was initially charged, on July 14 or 15, 1981, in the district court. The case was transferred to the Criminal Court of Baltimore (now the Circuit Court for Baltimore City) because of his election to have a jury trial. Initial arraignment in the circuit court took place on September 14, 1981, at which time the State sent to him or his counsel a "Notice of Additional/Mandatory Sentence". The notice stated, in relevant part, that

> "[T]he State will seek increased punishment as authorized by law since <u>Maurice King,</u> Defendant, was convicted of the violation(s) of <u>Art 27 Sections 36;</u> <u>36B</u> of the State of Maryland. The maximum increased/mandatory punishment, if the Court determines that the Defendant is a subsequent offender, is imprisonment for <u>10 years</u> and/or a fine of _____, or both on the above stated charges." (Underscoring in original, indicating blanks filled in by handwritten interlineation.)

Trial of the case was delayed for nearly eleven months — until August, 1982 — because of appellant's involvement in certain Federal court proceedings. Following the jury verdict on August 10, 1982, the court deferred sentencing until September 17, 1982, in order to consider a presentence investigation report. At no point prior to September 17, 1982, did appellant make any complaint or raise any question about the form or adequacy of the State's notice of intent to seek enhanced punishment.

At the sentencing hearing, the State placed into evidence a certified docket entry showing that in 1979 appellant had been convicted in the Criminal Court of Baltimore of a handgun violation for which he received a three-year sentence, subsequently reduced to three years probation. Appellant objected to any enhanced sentence on the sole ground that the September, 1981, notice did not comply with the requirement of Maryland Rule 734 b in that it failed to specify the prior conviction relied upon.

Through counsel, appellant conceded the 1979 conviction, and made no claim of surprise or prejudice with respect to the State's reliance on it. Indeed, it is clear from the colloquy between counsel and the court that appellant was fully aware that it was the 1979 conviction that was alluded to in the notice. His argument to the trial court and to us is a very precise and technical one; despite his actual knowledge of the basis of the State's warning, because the State's notice failed of technical compliance with the rule, the court was precluded from imposing a sentence specifically authorized

by the Legislature. Candidly, counsel stated that "when the State served Notice it was obvious to us the Notice was insufficient under the law", but that "[i]t is not my obligation to notify the State that they are proceeding improperly".

The trial court concluded that there had been substantial compliance with the rule, especially in light of appellant's actual knowledge of what was afoot.

We agree with appellant that the notice did not adequately set forth "each prior conviction to be relied upon", as required by Rule 734 b. Allusion or reference to "Art 27 Sections 36; 36B" simply does not suffice. Those sections proscribe a range of activities relating to handguns *and other weapons,*[1] and a mere reference to the statutes gives no clear or reasonable indication of the convictions upon which the State intends to rely. *Cf. Sullivan v. State,* 29 Md.App. 622 (1976). We concur as well that a defendant has no duty to bring a defective notice to the State's attention.

That does not end the inquiry, however, or necessarily compel the result urged by appellant.

As has been stated almost *ad nauseam,* the Maryland Rules "are not guides to the practice of law but precise rubrics 'established to promote the orderly and efficient administration of justice and are to be read and followed.'" *See Countess v. State,* 286 Md. 444, 463 (1979), and cases cited therein. This maxim or precept, though used most often as a basis for imposing sanctions for the violation of a court rule, really states a more fundamental principle; namely, that these precise rubrics are not ends in themselves, but rather are designed either to articulate or to serve some more basic purpose.

---

1. Art. 27, § 36 (a) makes it a misdemeanor to carry certain types of knives, clubs, metal knuckles, a nunchaku, "or any other dangerous or deadly weapon of any kind" concealed about the person, or to carry any such weapon or any chemical mace or tear gas openly and with intent to injure another person. Section 36B prohibits not only the unlawful wearing, carrying, or transporting of a handgun, but also, separately, the use of a handgun in the commission of a crime of violence.

The more recent cases emanating from the Court of Appeals and this Court acknowledge that principle and recognize that, in determining the consequences that ought to flow from the violation of a rule, the underlying function or purpose of the rule must be taken into account. If the violation punctures more than the rule itself — *i.e.,* if it impairs as well the right or the "good" sought to be protected by the rule — the sanction must likewise suffice to repair more than merely the wound to the rule. It must vindicate or restore the underlying interest. *See, for example, State v. Hicks,* 285 Md. 310 (1979); *Johnson v. State,* 282 Md. 314 (1978); *Countess v. State, supra,* 286 Md. 444. But if the effect of the violation is to offend only the rule — the shield — and not that which it guards, a lesser sanction, or perhaps no sanction, may be appropriate. *See In re Dewayne H.,* 290 Md. 401 (1981); *In re Howard L.,* 50 Md.App. 498 (1982).

Maryland Rule 734 has both a purpose and a history, and the purpose has to be viewed in light of the history.

Initially, the Maryland Court of Appeals adopted the theory that, when a defendant was being proceeded against as a subsequent offender subject to an enhanced punishment, the earlier convictions necessary to establish that status constituted an element of the prosecution that had to be averred in the indictment and proved at trial. This was made clear in *Maguire v. State,* 47 Md. 485 (1878), where the Court concluded that

(1) "[I]f the party be proceeded against for a second or third offense under the statute, and the sentence prescribed be different from the first, or severer, by reason of its being such second or third offense, the fact thus relied on must be averred in the indictment; for the settled rule is, that the indictment must contain an averment *of every fact essential to justify the punishment inflicted.*" (Emphasis supplied.) *Id.* at 496.

(2) Such an "averment of prior conviction can only be sustained by the production of the record. . . sustained by proof of the identity of the person

on trial with the one described in the former indictment." *Id.* at 497.

and

(3) The practice in Maryland is "to allow the prosecution to put the prior conviction before the jury as part of its evidence in chief, and before the accused commenced his evidence in defense." Thus, it was proper not only that the averment in the indictment be read to the jury at the opening of the case "but that the record of such prior conviction was admitted in evidence in support of the indictment, or rather of the particular averment therein of former conviction." *Id.* at 497.

These requirements, which in *Maguire* seemed to be derived from historical practice, were "constitutionalized" thirty-five years later in *Goeller v. State,* 119 Md. 61 (1912). The Court there declared a subsequent offender/enhanced punishment statute that permitted the trial court to ascertain the fact of a prior conviction from a perusal of its own docket and thus excused the State from having to aver and prove such conviction to be unconstitutional as a deprivation of the defendant's right under art. 21 of the Md. Decl. of Rights to be "informed of the accusation against him." The purpose of that constitutional right is to enable the defendant to prepare his defense; and that, said the Court at p. 63, "he cannot do without a full knowledge, both of every element of the offence charged, and of the penalty or penalties to which he may be subjected in event of conviction." *See also Hall v. State,* 121 Md. 577 (1913).

It is noteworthy that six months before *Goeller* was decided, the United States Supreme Court had concluded in *Graham v. West Virginia,* 224 U.S. 616 (1912), that the procedure called for in *Maguire* and *Goeller* was not required under the Fifth and Fourteenth Amendments to the United States Constitution. At p. 629, the Court stated:

"Although the state may properly provide for the allegation of the former conviction in the indictment, for a finding by the jury on this point in connection with its verdict as to guilt, and thereupon for the imposition of the full sentence prescribed, there is no constitutional mandate which requires the state to adopt this course even where the former conviction is known. It may be convenient practice, but is not obligatory."

*Graham* was not cited in the *Goeller* opinion.

Requiring the State to aver the prior conviction in the indictment and prove it at trial, though asserted by the Court to be of State constitutional dimension, raised a number of practical problems in terms of how the conviction was to be averred and how such averment was to be regarded by the jury. The Court wrestled with some of those problems in *Beard v. State,* 216 Md. 302, *cert. den.* 358 U.S. 846 (1958). It began by acknowledging as "settled law" that "an indictment charging a defendant as a second or third offender must allege the prior offenses", that a defendant's plea of not guilty "puts in issue the fact of the prior conviction as well as the question of whether or not he is guilty of the current offense", and that, if the defendant is found guilty of the current offense, "there must ordinarily be a specific finding by the jury on the historical fact of the previous conviction." *Id.* at 308-09. With respect to the averment, however, the Court found no constitutional requirement that an indictment allege a prior conviction "in any particular manner or in any particular place, so long as any such prior offenses are clearly stated as the basis for increased punishment if the accused is convicted of the current offense charged against him." *Id.,* 320. Declining to give any decisional guidance, the Court invited its Standing Committee on Rules of Practice and Procedure to give some thought to the matter. *See also McCoy v. State,* 216 Md. 332, *cert. den.* 358 U.S. 853 (1958).[2]

---

2. *Beard* presented a good illustration of some of the problems flowing from the then-current practice. In a six-count indictment, the State prosecuted Beard as a subsequent offender for narcotics violations. Counts 1 and

As we pointed out in *Sullivan v. State, supra,* 29 Md. App. 622, the Rules Committee ultimately responded with Maryland Rule 713, which the Court promulgated and made effective as of January 1, 1962. That rule remained faithful in substance to the decisional law, although it permitted some latitude in the method of averring and proving the prior convictions. As to averment, it directed that the indictment itself charge only the current offense and not refer to the State's intent to prosecute the defendant as a subsequent offender. It then provided for an "addendum" to the indictment,

> "which shall warn the defendant that the State has evidence that he has formerly been convicted of the same offense, *including the date and court in which he was previously convicted,* that it intends to prosecute the accused for the current offense as a second or subsequent offender, the maximum punishment which may be imposed upon the defendant if he is convicted of the current offense and found to be a second, or subsequent offender. . . ." (Emphasis supplied.)

The issue of the prior convictions still remained a triable one. The defendant was given the option of having that issue tried concurrently with the current offense or separately after a conviction on that offense, and he could elect, in either case, to have the issue tried before the jury or the court. As noted in *Ware v. State,* 13 Md.App. 302, 306 (1971), the proceeding with respect to the prior offense was "not a trial of guilt, but the determination of an issue. That issue

---

2 charged the current (1952) offense; counts 3 and 4 alleged both the current offense and a prior (1950) offense and conviction; and counts 5 and 6 charged the current offense and a second prior (1948) offense and conviction. Beard stipulated in open court to the two earlier convictions. In accordance with the court's instructions, the jury ignored counts 1 and 2 but returned general verdicts of guilty on counts 3 through 6. Beard argued that such general verdicts were legally insufficient to justify the enhanced punishment in that they did not include a specific finding with respect to the prior offenses. The Court first concluded that Beard's stipulation sufficed to warrant the increased punishment upon a finding of guilt as to the current offense (p. 309) but then went on to hold that the verdicts "amounted to a finding of the prior convictions" in any event.

is simply the historical fact of a prior conviction and the identity of the defendant as the person so convicted." How even this squared with the long-established decisional law excluding evidence of "other crimes" has never been made clear. *See Presley v. State,* 224 Md. 550 (1961), *cert. den.* 368 U.S. 957 (1962); *Harrison v. State,* 276 Md. 122, 155 (1975); and more recently *Cross v. State,* 282 Md. 468 (1978).

Notwithstanding the Supreme Court's pronouncements in *Graham v. West Virginia, supra,* 224 U.S. 616, Rule 713 clung to the notion that, at least to the extent that it determined or affected punishment, a prior conviction was in some way or another an essential ingredient of the current offense. That is why, at least as a matter of State constitutional law, it had to be specifically averred as an addendum to the indictment and proved in court by competent evidence.

Six weeks after promulgation of Rule 713, the Supreme Court decided *Oyler v. Boles,* 368 U.S. 448 (1962). Confirming *Graham,* the Court held, first, that although the habitual criminal issue — *i.e.,* whether the defendant is a subsequent offender — may be combined with trial of the current charge, if a State chose to handle the matter as two separate proceedings "due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding." *Id.,* 452. In a footnote (No. 6), the Court explained:

"Any other rule would place a difficult burden on the imposition of a recidivist penalty. Although the fact of prior conviction is within the knowledge of the defendant, often this knowledge does not come home to the prosecutor until after the trial, and in many cases the prior convictions are not discovered until the defendant reaches the penitentiary."

The Court recognized that a defendant "must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to trial on the substantive offense." The

West Virginia law, which was at issue in *Oyler,* provided for such notice to be given after conviction and before sentencing, which the Court deemed sufficient.[3]

The theory embodied in Rule 713, and the elaborate mechanism to implement it, were discarded in 1977 with the adoption of current Rule 734. As the Rules Committee noted in its 53rd Report to the Court, there is no constitutional right to a jury trial on the issue of prior convictions, and that "[s]ubsequent offender provisions are a matter of sentencing rather than a matter of fact to be tried before a jury and the existence of prior convictions [is] a matter for the court to determine as it must so determine in any other sentencing situation where prior convictions are involved."[4] 53rd Report, 3 Md.Reg. 8 (1976); *see also* memorandum of special reporter Robert J. Ryan, attached to the 53rd Report.

The format of the new rule, according to Mr. Ryan's memorandum, was taken from analogous District of Columbia and Federal statutes (D.C. Code, § 23-111; 18 U.S.C. § 3575) and from this Court's pronouncements in *Moore v. State,* 17 Md.App. 237 (1973).

It is evident, of course, that Maryland Rule 734 made a number of significant changes in both law and practice. No longer was a prior conviction to be regarded in any way as an element of the current offense; no longer was it elevated to the status of a triable issue. The *Maguire-Goeller-Beard* analysis was apparently rejected. With the exception of the

---

**3.** The West Virginia law also required a defendant to plead immediately to the habitual criminal charge, and that aspect was also challenged on the ground that it left no time to prepare a defense. The Court observed, however, that the defendants had not asked for a continuance and did not make a timely complaint about the adequacy of the notice, and therefore "are in no position now to assert that they were not given a fair opportunity to respond. . . ." *Id.,* 453.

**4.** This thought was apparently endorsed by the Court of Appeals as well. In adopting and publishing the rule, it permitted as an annotation the following Committee Note: "Sentencing a defendant as a subsequent offender is here conceived to be in the sentencing power of the court and not a matter for a jury. The burden of establishing the prior offense rests with the State."

notice requirements, prior convictions for "subsequent offender" purposes were to be treated in much the same way as prior convictions are generally treated for sentencing purposes. The sanctity that had surrounded prior convictions when they were regarded as necessary averments in the indictment subject to proof before a jury has largely been stripped away.

What, then, is the function of the pretrial notice in this new legal setting? It is not required under the Federal Constitution and, with the Court's departure from *Maguire* and *Goeller* through its adoption of Rule 734, the underpinning of its requirement under art. 21 of the Declaration of Rights appears to have been significantly weakened, if not removed altogether. *Cf. State v. Loveday,* 48 Md.App. 478 (1981), *aff'd Loveday v. State,* 296 Md. 226, 462 A.2d 58 (1983).[5] Some guidance may be found in cases arising under the District of Columbia and Federal statutes — the models, we are told, for Rule 734.

D.C. Code, § 23-111 (a), in similar vein with Rule 734 b, precludes enhanced punishment by reason of prior convictions unless "prior to trial or before entry of a plea of guilty" the prosecutor files with the court and serves on the defendant a document "stating in writing the previous convictions to be relied upon." In *Arnold v. United States,* 443 A.2d 1318 (D.C. App. 1982), the prosecutor filed the document too late — after the commencement of trial under D.C. law — yet the Court sustained the enhanced punishment ultimately imposed on the ground of harmless error. In reaching that determination, the Court examined the legislative history of the statute, which had been enacted by Congress, in an attempt to discern the purpose of the pretrial

---

5. *Loveday* involved the State's habitual criminal law (art. 27, § 643B (c)), providing a *mandatory* prison term for a third violent offense. Under Maryland Rule 734, as we have noted, pretrial notice is not required in such a case. The *Loveday* Court, relying on *Graham* and *Oyler,* sustained that approach against constitutional challenge. Although the Court of Appeals noted that pretrial notice was required *under the rule* where the enhanced sentence was a *permissive* one, the question of whether that requirement remained a matter of State constitutional law was not before the Court and was not addressed.

notice requirement. Why require such a notice before *trial,* as opposed to before *sentencing,* when the prior convictions are irrelevant to the defendant's guilt or innocence of the current offense?

From the legislative history,[6] the Court concluded that the requirement had a dual purpose: "(1) to give notice to the defendant so that he may reasonably assess whether to plead guilty or proceed to trial, and (2) to avoid the 'unfairness' of increasing the potential punishment after the trial has begun." *Id.* at 1326. In that particular case, however, the record revealed that Arnold "was fully aware of the government's intention to file informations seeking enhanced punishment, thus allowing him an adequate opportunity to determine whether to plead guilty or proceed to trial" and that "[t]he overriding statutory purpose of providing a defendant 'notice' of the possibility of enhanced punishment was clearly satisfied in this case." *Id.* at 1328.

We are aware of no cases arising under the Federal statute — 18 U.S.C. § 3575 — analogous to *Arnold* or to the case now before us. In *United States v. Fatico,* 458 F.Supp. 388, 407 (E.D. N.Y. 1978), *aff'd* 603 F.2d 1053 (1979), *cert. den.* 444 U.S. 1073 (1980), the Court regarded the requirement of pretrial notice as "designed to advise defendant of the risk he runs should he plead guilty." In at least one instance, it was held that the failure of the government's pretrial notice to comply with the statutory requirement did not constitute

---

**6.** The history is illuminating. As passed by the House of Representatives, the statute called for the notice to be filed after conviction but before sentencing. The House Committee concluded that "pretrial notice to the defendant of his prior record of convictions serves no useful purpose since the defendant is already aware of his own criminal record and the issue of recidivism is not a proper issue in the determination of the defendant's guilt or innocence." The Senate opted for a pretrial notice, believing first (in spite of *Graham v. West Virginia* and *Oyler v. Boles*) that the earlier notice merely fulfilled a defendant's constitutional right to be informed before trial of the nature of the charges against him, and, second, as a matter of policy, such notice would enable him to plead more intelligently and would prevent a raising of the stakes after trial commenced. The Conference Committee adopted the Senate version, noting that "unless such notice precedes trial, a defendant cannot assess the consequences of his pleading or defending at trial." The Senate version also was consistent with the current practice in the District of Columbia municipal courts.

a "fundamental defect" sufficient to permit collateral attack on the sentence under 28 U.S.C. § 2255 where notice was in fact provided and it was sufficient to impart knowledge of the government's intent to proceed under § 3575. *Marshall v. United States,* 576 F.2d 160 (9th Cir. 1978). *Cf. United States v. Ilacqua,* 562 F.2d 399 (6th Cir.), *cert. den.* 435 U.S. 906, 435 U.S. 917, 435 U.S. 947 (1977), where, on direct appeal, substantial compliance with the statutory requirement of particularity was deemed sufficient.

With this background, we find appellant's argument to be without merit. The State did, in fact, give timely notice that it intended to seek enhanced punishment up to ten years — the maximum allowed for a second offense — and that it would be relying on convictions under §§ 36 (a) and 36B of art. 27. Although, as we have already stated, that did not suffice to comply with the requirement that the notice "set forth each prior conviction to be relied upon", it certainly told appellant all that he needed to know in order to decide intelligently how to plead to and defend against the current charge. The State's intention to treat appellant as a subsequent offender was clearly imparted to him. In light of that, and appellant's *actual knowledge* that the conviction alluded to was the one emanating from the Criminal Court of Baltimore in 1979, we would be subverting rather than promoting "the orderly and efficient administration of justice" by disturbing the judgment entered below and precluding the imposition of the ten-year sentence. *See State v. Tyler,* 212 A.2d 573 (N.J. Super. 1965), *cert. den.* 384 U.S. 992 (1966). The function and purpose of the rule have been satisfied; the "good" sought to be protected by it has not been injured.

> *Judgment affirmed; appellant to pay the costs.*