515 A.2d 1190

**Lester ARMSTRONG and Ronald Thomas Johnson**

v.

**STATE of Maryland.**

**No. 148, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Oct. 14, 1986.

Certiorari Denied March 23, 1987.

24

Gary S. Offutt, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellants.

Richard B. Rosenblatt, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty., for Baltimore City and Michael Flannery, Asst. State's Atty., for Baltimore City, on the brief), Baltimore, for appellee.

Argued before WILNER, ROSALYN B. BELL and WENNER, JJ.

WILNER, Judge.

Lester Armstrong and Ronald Johnson, appellants, were convicted in the Circuit Court for Baltimore City of possession of marijuana with intent to distribute and unlawful transportation of a handgun. Johnson was sentenced to concurrent one-year terms of imprisonment. Armstrong was given five years for the marijuana offense and a concurrent term of ten years for the handgun violation. Together, appellants raise four issues in this appeal:

"1. Did the trial court err when it denied Appellants' motions to suppress the evidence obtained from the automobile as the fruit of an illegal search?

2. Did the trial court err when it admitted evidence of the estimated street value of marijuana seized from the car?

3. Did the trial court err when it admitted evidence regarding the nature of hollow point bullets?

4. Did the trial court commit plain error in its instruction to the jury on the crime of transporting a handgun?"

Armstrong, alone, raises two additional questions:

"5. Should Armstrong's statement have been suppressed?

6. Did the trial court err when it sentenced Armstrong for the handgun offense as a recidivist?"

We shall answer the last question in the affirmative and the rest in the negative.

## I. *Suppression*

While working a plainclothes narcotics detail on the evening of February 6, 1985, officers Elmer Pennington and John Welker saw a Ford Mustang automobile pull out of an alleyway and almost strike their unmarked car. They followed the Mustang, which was being driven in an erratic manner, and eventually caused it to be stopped by a marked police car. Pennington approached the passenger side of the Mustang, shined his flashlight into the vehicle, and noticed what appeared to be the butt of a handgun sticking out from underneath the front passenger seat. He asked the passenger, appellant Armstrong, to get out of the car. Pennington then informed the other officers of the presence of the handgun, whereupon Officer Welker asked the driver of the vehicle, appellant Johnson, also to step out of the car. Neither appellant replied when asked by Officer Pennington if he owned the handgun, and both were then placed under arrest for a handgun violation.

After making the arrest, the officers searched the Mustang. In addition to the fully-loaded handgun retrieved

from under the passenger seat, a brown paper bag containing marijuana was recovered from underneath the driver's seat, and a fully-loaded ammunition pouch, commonly referred to as a "speed strip," was discovered in the glove compartment.

Appellants contend that Officer Pennington's shining of a flashlight into the interior of the stopped vehicle constituted an illegal search, and that the evidence thereafter seized from the vehicle should be excluded.[1] They argue that the use of artificial illumination for the purpose of conducting a search into areas that probably would not have been visible in natural light is illegal in the absence of probable cause. In support of their claim, appellants assert that the position of the handgun underneath the passenger seat, combined with Armstrong's body position in the passenger seat of the vehicle, indicate an attempt by him to create an area where he had a legitimate expectation of privacy.

Unfortunately for appellants, they failed to present this argument to the trial court and therefore have waived their right to appellate review of it. Armstrong's attack below was grounded on the notion that Pennington's order to him to exit the vehicle amounted to an arrest for which there was no probable cause and that the search, conducted as an incident to the arrest, was equally invalid. Johnson, on the other hand, asserted that the gun was not discovered until after the search had begun and thus could not form probable cause for the search. Neither argued that the illumination itself constituted a search.

---

1.  The State has not contested Armstrong's standing, as a passenger in the car driven by Johnson, to press this argument, and we shall therefore assume, for purposes of this appeal, that he has such standing. *Compare Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), *reh'g denied* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979); *Butler v. State,* 46 Md.App. 317, 416 A.2d 773 (1980), *cert. dismissed; Griffin v. State,* 604 S.W.2d 40 (Tenn.1980); *Koonce v. State,* 269 Ark. 96, 598 S.W.2d 741 (1980). *See generally* 3 W. LaFave, *Search and Seizure* § 11.3(e) (1978 & Supp.1986).

It is well-settled, of course, that, "where one objecting to the admission of evidence, although not requested by the court to state his grounds, goes ahead and delineates the specific grounds for his objection, he will be bound by those grounds and will ordinarily be deemed to have waived other grounds not mentioned." *von Lusch v. State,* 279 Md. 255, 263, 368 A.2d 468 (1977). *See also, e.g., Brecker v. State,* 304 Md. 36, 39–40, 497 A.2d 479 (1985); *Thomas v. State,* 301 Md. 294, 328, 483 A.2d 6 (1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985).[2]

## II.  *Value of Marijuana*

During the course of his direct examination, Officer Pennington was asked what the "street value" was of the marijuana taken from the Mustang.  Over Johnson's objection, Pennington stated that it was worth "[a]bout $500." That forms the basis of the second complaint.

The answer is twofold.  As to Armstrong, it is one of non-preservation.  He neither objected to the question nor moved to strike the answer.  As to Johnson, who argues that Pennington was not sufficiently qualified to render such an opinion, we simply disagree.  The record shows that Officer Pennington had nearly 12 years of service as a police officer—close to five years in Baltimore City and seven years in Concord, New Hampshire.  Although not a full-time narcotics officer, he had occasionally been "detailed to work narcotics."  He was, as noted, on narcotics detail on the night he arrested appellants.

In *Fitzwater v. State,* 57 Md.App. 274, 281, 469 A.2d 909 (1984), we summarized the rule regarding expert opinion testimony thusly:

"The Court of Appeals of Maryland has established the test for admissibility of expert testimony.  That test is whether the jury can receive appreciable help from the

---

2.  Lest appellants look unduly askance at their trial counsel, we hasten to add that, had we considered the point, we would have found no merit in it.  *See Scales v. State,* 13 Md.App. 474, 477, 284 A.2d 45 (1971); *Sweeting v. State,* 5 Md.App. 623, 626–29, 249 A.2d 195 (1969).

particular witness on the subject. . . . The determination of whether the expert testimony will be of appreciable help and therefore admissible is within the sound discretion of the trial court. . . . The court's exercise of that discretion will not be disturbed on appeal unless clearly erroneous. . . . A witness may be competent to express an expert opinion if he is reasonably familiar with the subject under investigation, regardless of whether special knowledge is based on professional training, observation, and/or actual experience. . . . A police officer possessing a special knowledge gained from a background of experience, in the discretion of the trial court, may be permitted to express an expert opinion in the area of that special knowledge."

(Citations omitted.)

We find no abuse of discretion in allowing Officer Pennington to state his opinion of the value of the seized marijuana.[3]

### III. *Hollow Point Bullets*

Officer James Perry, a firearms examiner with the Baltimore City Police Department, was questioned by the State's Attorney about the handgun and the five rounds of ammunition inside it which were seized. Two of the rounds were jacketed hollow point bullets. When asked to describe the purpose for which hollow point bullets were designed, Officer Perry testified, over Armstrong's objection, that "[t]hey are designed so when they hit you, they smack, it gives you a greater knock down power." Appellants now argue that the testimony was irrelevant and that the trial court erred in admitting it into evidence.

■ Here again, the answer is a dual one. Johnson, by neither objecting to the question nor moving to strike, has waived his right to appeal this issue. With regard to

---

3. Other evidence indicated that, altogether, there were about 190 grams (7 ounces) of marijuana, and that an average cigarette would contain about a half gram. The 190 grams could thus have produced some 380 cigarettes.

Armstrong's complaint, although we agree that the rele-
vance was, at best, tenuous, we think that the error, if any,
was harmless beyond a reasonable doubt. *See Johnson v.
State*, 292 Md. 405, 430, 439 A.2d 542 (1982).

### IV. *Instruction*

■ Md.Code Ann. art. 27, § 36B(b), makes it a misde-
meanor for any person to "knowingly transport any hand-
gun ... in any vehicle traveling upon the public roads ... in
this State." It also states that "it shall be a rebuttable
presumption that the person is knowingly transporting the
handgun."

In its instructions on this offense, the court stated, "Now,
the second charge is transporting a handgun. It is a crime
to transport, that is to carry, a handgun on the public
streets and highways of this State."

Appellants offered no objection to that instruction. Now,
they complain about the omission of the word "knowingly,"
asking us, pursuant to Md.Rule 4–325(e), to take cognizance
of what they regard as plain error material to their rights.
We shall decline the invitation. If error at all, the omission
was one that was both obvious and easily correctable had
the matter been brought to the court's attention. *See
Medley v. State*, 52 Md.App. 225, 448 A.2d 363, *cert. denied*
294 Md. 544 (1982). Appellants have failed to preserve the
point for appellate review.

### V. *Armstrong's Statement*

On May 27, 1985, as part of its "discovery" disclosures,
the State informed appellants that neither of them had
made a "statement or confession, oral or written, which is
known to the State at the present time." At the suppres-
sion hearing held on July 19, the State's Attorney informed
the court that he had just that morning learned from
Officer Pennington of an oral statement made by Arm-
strong at or about the time of a bail hearing in District
Court. The prosecutor stated that he intended to offer the
statement at trial and wanted a preliminary ruling on its

voluntariness. Armstrong, though denying that he had ever made the statement, objected on the dual grounds that the statement, if made, was involuntary and that the State had failed to make a timely disclosure of it, as required by Md.Rule 4–263. The court rejected those defenses and the statement was indeed placed into evidence at trial.

The statement at issue concerns the handgun found in the car. As noted, both appellants had denied any knowledge of the gun.

Officer Pennington testified at the suppression hearing that, after Armstrong had been arrested and taken to the station house, he told Pennington that he had information concerning "some narcotics violations" in Baltimore and New York. Pennington told Armstrong that he "would give him a number and he could call our CID Narcotics Unit." Pennington himself informed the CID Unit that Armstrong had been incarcerated and that he had some information about narcotics. Sometime later, apparently in connection with Armstrong's bail hearing, Pennington saw Armstrong in the hallway of the District Court building. He testified:

"I initiated the conversation. I went up to him and asked him how he was doing. I also asked him if he was contacted by our CID Unit or if he had contacted them and he had said no, not at that point, and that's when he told me that—Oh, he asked me if he did assist the Narcotics Unit what would happen with this case pending and I told him that I'm sure, you know, that something could be worked out with the State's Attorney's Office and the CID Narcotics or the DEA, and that's when he told me it was his gun, that he—

Q. What were his exact words?

A. *He told me [he] had borrowed the gun.*

Q. Was that the end or the conclusion of the conversation?

> A.  Yes.  I told him that he should contact our Narcotics Unit."

(Emphasis added.)

The record shows two other important things: first, at the time this second conversation took place, Armstrong was no longer in custody—he had been released on bail; and, second, as noted, the prosecutor was not informed about the conversation until the morning of the suppression hearing.  It was not mentioned in any of the reports in his file, and he brought it to the attention of defense counsel within 10 minutes after hearing of it.

On this record, we find no error in the court's refusal to suppress the statement.

■  As to voluntariness, it does not appear from this apparently chance encounter that there ever was a custodial interrogation or that Pennington made any promises or inducements to Armstrong to obtain a statement in connection with this case.  Armstrong's offer was to reveal information about narcotics violations generally.  A trial court's finding of voluntariness will not ordinarily be disturbed on appeal unless the finding constitutes an abuse of discretion (*Bean v. State*, 234 Md. 432, 439, 199 A.2d 773 (1964); *Tate v. State*, 236 Md. 312, 316, 203 A.2d 882 (1964); *Grammer v. State*, 203 Md. 200, 218–19, 100 A.2d 257 (1953), *cert. denied* 347 U.S. 938, 74 S.Ct. 634, 98 L.Ed. 1088 (1954)), and we find no such abuse here.

■  With respect to appellant's second complaint, it is not at all clear in the first instance that there *was* a discovery violation.  The statement at issue did not really tend to negate or mitigate appellant's guilt, and thus would not be mandatorily disclosable under Md.Rule 4–263(a)(1).  It would, instead, fall under Rule 4–263(b)(2)—"all statements made by the defendant to a State agent *that the State intends to use at a hearing or trial. . . .*"  (Emphasis added.)  The State's Attorney informed the court that he first learned about the conversation with Pennington that very morning and that he disclosed it to defense counsel

within 10 minutes. He obviously could not have intended to use the statement before he knew of it.

Even if we were to assume a violation of the Rule, we would find no abuse of discretion in the court's refusal to suppress the statement. Suppression is merely a *permissible* remedy for a violation of section (a) or (b); it is not a mandatory one. *See* Rule 4–263(i). Under the circumstances of this case, suppression was not required.

## VI. *Armstrong's Sentence*

Md.Code Ann. art. 27, § 36B(b), in addition to stating the crime of unlawful carrying or transporting of a handgun, prescribes a range of punishments for its violation, including certain minimum mandatory sentences. We described those provisions in *King v. State,* 55 Md.App. 672, 675–76, 466 A.2d 1292 (1983), *aff'd* 300 Md. 218, 477 A.2d 768 (1984):

> "With respect to punishment, § 36B(b)(i) provides that for the first offense, the defendant may be fined from $250 to $2500 and be imprisoned from thirty days to three years. For a second offense—if he has once before been convicted of wearing, carrying, or transporting a handgun in violation of § 36B—§ 36B(b)(ii) states that the defendant 'shall be sentenced ... for a term of not less than 1 year nor more than 10 years, and it is mandatory upon the court to impose no less than the minimum sentence of 1 year....'
>
> This 'enhanced sentence' or 'subsequent offender' provision contains two elements, one mandatory and one permissive. It *requires* a minimum sentence of at least one year, which is more than the required minimum but less than the permitted maximum for a first offense; and it *permits* a maximum sentence of ten years, which exceeds the three-year maximum allowed for the first offense."

(Emphasis in original.)

At sentencing, the State proffered and Armstrong conceded that the instant conviction was Armstrong's second under § 36B(b). It therefore sought the "enhanced" sen-

tence—minimum one year, maximum 10 years. The court, as noted, imposed a 10–year sentence.

Armstrong objected to his being subjected to enhanced punishment on the ground that the State had failed to comply with the notice requirements of Md.Rule 4–245. Sections (b) and (c) of that Rule provide:

"(b) Required Notice of Additional Penalties.—When the law permits but does not mandate additional penalties because of a specified previous conviction, the court shall not sentence the defendant as a subsequent offender unless the State's Attorney serves notice of the alleged prior conviction on the defendant or counsel before the acceptance of a plea of guilty or nolo contendere or at least 15 days before trial in circuit court or five days before trial in District Court, whichever is earlier.

(c) Required Notice of Mandatory Penalties.—When the law prescribes a mandatory sentence because of a specified previous conviction, the State's Attorney shall serve a notice of the alleged prior conviction on the defendant or counsel at least 15 days before sentencing in circuit court or five days before sentencing in District Court. If the State's Attorney fails to give timely notice, the court shall postpone sentencing at least 15 days unless the defendant waives the notice requirement."

It was conceded that the State failed to give notice either under section (b) or section (c). The court took the view, without objection by Armstrong, that the case fell within the purview of section (c) of the Rule rather than section (b), and that Armstrong was entitled to 15 days notice prior to sentencing. It then indicated that it would postpone sentencing for 15 days in order to comply with section (c), whereupon Armstrong, conceding an earlier conviction, agreed to "waive notice."

Armstrong now argues that the case falls within section (b) of the Rule and that, in order for him to be sentenced under § 36B(b)(ii), it was incumbent upon the State to give notice prior to *trial.*

█ Until *Walczak v. State,* 302 Md. 422, 488 A.2d 949 (1985), we probably would have declined to review this complaint because it was not raised below. Md.Rule 1085. In *Walczak,* however, the Court of Appeals adopted the view that "when the trial court has allegedly imposed a sentence not permitted by law, the issue should ordinarily be reviewed on direct appeal even if no objection was made in the trial court." *Id.,* 427, 488 A.2d 949. *See also Osborne v. State,* 304 Md. 323, 326 n. 1, 499 A.2d 170 (1985). That is the case here. If Armstrong is correct in his view that section (b) of the Rule applies, the State would have forfeited its right to have him sentenced as a second offender under § 36B(b)(ii); the maximum sentence in that event would be three years in prison (and a $2,500 fine), and the 10–year sentence actually imposed would be one "not permitted by law." The issue is therefore properly before us for review.

█ Sections (b) and (c) of Rule 4–245 address somewhat different concerns. If the law prescribes a *mandatory* penalty based on prior convictions, the only relevant issue is whether the defendant meets the criteria for subsequent offender status; if he does, there is no discretion in terms of sentencing, especially under § 36B. *See State v. Hannah,* 307 Md. 390, 514 A.2d 16 (1986). That issue is of concern only at sentencing. It can have no bearing on trial or pre-trial strategy, and, thus, reasonable notice before sentencing is all that is required for the defendant to challenge the State's assertion that he is a subsequent offender subject to a mandatory sentence.

Where the law merely *permits* but does not *mandate* an increased sentence, the issue of subsequent offender status, including whether the State intends to seek the increased sentence, can affect the defendant's pre-trial and trial strategy. It is a factor to consider in plea bargaining and in deciding whether to plead guilty. *See King v. State, supra,* 55 Md.App. 672, 685–86, 466 A.2d 1292. That is why, in

that circumstance, *pre-trial* rather than merely *pre-sentence* notice is required.

As we observed in *King*, § 36B(b)(ii) contains both mandatory and permissive features. The mandatory feature is the one-year minimum sentence, which, as noted, is within the permissive range for a first offense and therefore is not really an "additional penalty." The permissive feature is the possibility of a sentence exceeding three years. That *is* an "additional penalty," and it is purely discretionary. It therefore necessarily implicates section (b) of the Rule, requiring pre-trial notice.

For whatever reason, the State simply "goofed," and in so doing it precluded the court from sentencing Armstrong under § 36B(b)(ii). He must be sentenced under subsection (b)(i).

JUDGMENTS AS TO APPELLANT JOHNSON AFFIRMED; JUDGMENT AS TO APPELLANT ARMSTRONG UNDER CRIMINAL INFORMATION NO. 28511 942 (MARIJUANA) AFFIRMED; CONVICTION UNDER CRIMINAL INFORMATION NO. 28511 943 (HANDGUN) AFFIRMED, SENTENCE VACATED, CASE REMANDED TO CIRCUIT COURT FOR BALTIMORE CITY FOR RESENTENCING; COSTS TO BE PAID THREE–FOURTHS BY APPELLANTS, ONE–FOURTH BY MAYOR AND CITY COUNCIL OF BALTIMORE.